1
2
3
4
5
6
7
8 **UNITED STATES DISTRICT COURT**

9 **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10 MATTHIAS MUELLER, | **CASE NO. 16cv2997-GPC(NLS)** |
| 11                                      Plaintiff, | |
| 12     v. | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| 13 SAN DIEGO ENTERTAINMENT | |
| 14 PARTNERS, LLC, a California Limited Liability Company; DAVE | **[Dkt. No. 16.]** |
| 15 DEAN, an individual and DOES 1 through 25, inclusive, | |
| 16                                      Defendants. | |

17

18          Before the Court is Defendants' motion to dismiss the first amended complaint

19 pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 16.) An opposition

20 as well as a reply were filed. (Dkt. Nos. 18, 19.) Based on the reasoning below, the

21 Court DENIES Defendants' motion to dismiss.

22                                                    **Background**

23          On December 9, 2016, Plaintiff Matthias Mueller ("Plaintiff") filed a complaint

24 against Defendants San Diego Entertainment Partners, LLC ("SDEP") and Dave Dean

25 ("Dean") (collectively "Defendants") for securities violations and related causes of

26 action. (Dkt. No. 1.) On May 22, 2016, the Court granted Defendants' motion to

27 dismiss with leave to amend. (Dkt. No. 14.) On June 4, 2017, Plaintiff filed a first

28 amended complaint ("FAC") alleging violations of § 10b and Rule 10b-5 of the

Securities Exchange Act of 1934, violation of Section 20(a) of the Securities Exchange Act of 1934, fraudulent inducement, negligent misrepresentation, California securities fraud, rescission pursuant to California Corporations Code section 25501, and violation of California's Business & Professions Code section 17200 *et seq*. (Dkt. No. 15, FAC.)

According to the FAC, Defendant SDEP was organized to acquire, develop and operate a nightclub called "Avalon San Diego", similar to Avalon Hollywood, at a building located at 4th Avenue and B Street in San Diego, CA. (Id. ¶¶ 6, 10, 11.) Defendant Dean is one of only two managing members and officers of SDEP. (Id. ¶ 7.) Around July 2013, Dean approached Plaintiff seeking his investment in Avalon San Diego. (Id. ¶ 10.) Dean represented that he was part of the original development team at Avalon Hollywood[1] in 2002, had experience operating nightclubs in San Diego since 2006, and owned and/or directed similar clubs in London, San Francisco and Los Angeles for twenty-five years. (Id. ¶ 11.) He claimed he was in charge of fundraising for Avalon San Diego as well as overseeing the construction. (Id.) He further asserted that Avalon San Diego would be similarly successful as Avalon Hollywood. (Id.) Dean informed Plaintiff that $3.5 million was needed to be raised to acquire, develop, and operate the venue, $500,000 of which was contributed by him and the other manger, John Lyons. (Id.)

Over the following months, Dean would call and send emails and text messages to Plaintiff about the status of Avalon San Diego. (Id. ¶ 12.) During this time, in order to lure Plaintiff's investment in Avalon San Diego, Dean made the following alleged misrepresentations:

> a) that Defendants would immediately embark on renovating and remodeling the venue resulting in a brand new nightclub;
> b) that the venue would be open within few months, accommodating various activities including live entertainment, international touring DJs, dance club nights, special events and media/film production;
> c) that Defendants' long-term Boston partners had already agreed to provide funds in the total amount of $2.5 million, and thus with Plaintiff's $200,000 investment, the project was sufficiently funded to

---

[1] Avalon Hollywood is a historic nightclub in Hollywood, CA. See http://avalonhollywood.com/about/

move forward;
d) that Defendants would lease the building;
e) that the venue would generate high return for Plaintiff.

(Id. ¶ 13.) Plaintiff said he would only agree to make an investment if SDEP immediately started construction to develop the venue. (Id. ¶ 14.) In an email dated April 20, 2014, Dean stated they were starting on some initial demolition work; however, the statement was untrue as no work had begun on the project. (Id. ¶ 15.) In an email dated August 27, 2014, Dean represented that the fundraising for Avalon San Diego would end by early to mid-September and SDEP was ready to initiate construction in September 2014. (Id. ¶ 15.) However, these statements were later discovered to be false. (Id.) Relying on these representations, Plaintiff agreed to acquire Units of membership interest in Avalon San Diego. (Id. ¶ 17.)

Around October 31, 2014, Plaintiff and Defendants entered into a subscription agreement ("Agreement") where Plaintiff agreed to purchase Units in Avalon San Diego and transferred $200,000 to Defendants' bank account. (Id. ¶¶ 18, 19.) Dean reiterated the promises representing that they would move forward with the project immediately and that within a few months the venue would be open to the public. (Id. ¶ 19.)

Based on Deans' representations of extensive knowledge and experience in the nightclub industry, it was reasonable for Plaintiff to rely on his false and/or misleading statements. (Id. ¶ 20.) Plaintiff was under the reasonable impression that Defendants would immediately start constructing, renovating and remodeling the venue and that the venue would open its doors to the public within a few months and that the project would be sufficiently funded to move forward since Defendants had already secured an unconditional $2.5 million from their long-term Boston partners. (Id. ¶ 22.) He reasonably relied on Defendants' representations because they also presented Plaintiff with a monthly beverage credit once Avalon San Diego opened to the public. (Id. ¶ 21.)

Later, Plaintiff learned Defendants' representations were false as they had no

intention to start remodeling, renovating, and opening the venue immediately after Plaintiff bought the Units, that the venue would not be open to the public within a few months, that Defendants' Boston partners had preconditions to funding the remaining $2.5 million which made their involvement uncertain from the very beginning, that Defendants contemplated purchasing the building so the project was not sufficiently funded, and that the venue would not generate high returns for Plaintiff. (Id. ¶ 23.)

As one of only two managing members and officers of SDEP, who was in charge of fundraising and overseeing the construction of the venue, and with extensive knowledge and experience in the industry, Dean knew his representations to Plaintiff were false and/or misleading. (Id. ¶ 25.) He was one of two people who possessed all the accurate and material information as to the status of Avalon San Diego. (Id.) Dean made these false misrepresentations knowingly and intentionally in order to lure Plaintiff to invest $200,000 in the project. (Id. ¶ 26.)

As a result of the misrepresentations, Plaintiff has incurred damages. (Id. ¶ 27.) More than two years have passed since the Agreement was executed and Defendants have been paying rents on the building without taking a step towards remodeling, renovating and opening the venue. (Id.) Despite Plaintiff's demand for the return of his money, Defendants have failed and refused to return his money. (Id. ¶ 28.)

## Discussion

### A.    Legal Standard on Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

- 4 -

[16cv2997-GPC(NLS)]

(2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. See Desoto, 957 F.2d at 658; Schreiber, 806 F.2d at 1401.

**B.      Legal Standard on Federal Rule of Civil Procedure 9(b)**

A cause of action alleging fraud, as in this case, must also comply with Rule 9(b) which requires that the circumstances constituting fraud must be plead with particularity. Fed. R. Civ. P. 9(b). Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Id. To satisfy the heightened pleading requirements, the plaintiff must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."

<u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 553 (9th Cir. 2007) (internal citations omitted). In addition, the complaint must indicate "what is false or misleading about a statement, and why it is false" and "be specific enough to give defendants notice of the particular misconduct that they can defend against the charge and not just deny that they have done anything wrong." <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106-07 (9th Cir. 2003) (internal citations omitted) ("[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.").

## C.    Securities Exchange Act of 1934, § 10(b) and Rule 10b-5

In the prior order on Defendants' motion to dismiss, the Court concluded that while the complaint sufficiently alleged the misrepresentations with particularity,[2] Plaintiff did not sufficiently allege the state of mind of Defendants. (Dkt. No. 14 at 8-9.) In the instant motion, Defendants argue that the securities fraud action should still be dismissed because Defendants' state of mind is still not properly plead despite the addition of facts. Plaintiff argues that he has properly plead Defendants' state of mind.

Section 10(b) of the Securities Exchange Act of 1934 ("Act") makes it unlawful for "any person . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or . . . for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b–5 implements this provision by making it unlawful for any person "[t]o employ any device, scheme, or artifice to defraud" or "make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading" or "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(a), (b), & (c).

---

[2]Defendant also argues that the misrepresentations were not plead with particularity; however, the Court already concluded that the misrepresentations met the Rule 9(b) and PSLRA heightened pleading standards.

To state a securities fraud claim under § 10(b) of the Act and Rule 10b-5, a plaintiff must show (1) a material misrepresentation or omission, (2) scienter, (3) in connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 37 (2011) (citation omitted). A complaint alleging claims under § 10(b) and Rule 10b-5 must satisfy the pleading requirements of both the PSLRA and Rule 9(b). In re Verifone Holdings, Inc. Sec. Litig., 704 F.3d 694, 701 (9th Cir. 2012).

In 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA") to curb abuses of securities fraud litigation. Amgen, Inc. v. Conn. Retirement Plans and Trust Funds, 133 S. Ct. 1184, 1200 (2013). These include "nuisance filings, targeting of deep-pocket defendants, vexatious discovery request and manipulation by class action lawyers." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 320 (2007). In response to these abuses, the PSLRA imposed a heightened pleading requirement under securities fraud actions under § 10(b) and Rule 10b-5 requiring that falsity and scienter be plead with particularity. Amgen, Inc., 133 S. Ct. at 1200; Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009).

Under the PSLRA's heightened pleading instructions, a complaint alleging that the defendant made a false or misleading statement must: "(1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' 15 U.S.C. § 78u–4(b)(1); and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' § 78u–4(b)(2)." Tellabs, Inc., 551 U.S. at 321. "It does not suffice that a reasonable fact finder plausibly could infer . . . the requisite state of mind." Id. at 313. Rather, the inference of scienter must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." Id.

To satisfy the requisite state of mind element, "a complaint must 'allege that the defendant[ ] made false or misleading statements either intentionally or with deliberate

recklessness.'" Zucco, 552 F.3d at 991 (citation omitted).  To determine whether the facts give rise to a "strong inference that the defendant acted with the required state of mind", the court must determine whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Tellabs, 551 U.S. at 322-23; see also Matrixx, 131 S. Ct. at 1324 (quoting Tellabs, 551 U.S. at 326) (reiterating that courts should review all the allegations in the complaint "holistically" to determine whether scienter has been properly pled).  In a holistic review, vague or ambiguous allegations can be considered in determining whether the complaint raises a strong inference of scienter.  Zucco, 552 F.3d at 1006.

In conducting the analysis, the court must also "take into account plausible opposing inferences" that could weigh against a finding of scienter.  Tellabs, 551 U.S. at 322.  "Even if a set of allegations may create an inference of scienter greater than the sum of its parts, it must still be at least as compelling as an alternative innocent explanation." Zucco, 552 F.3d at 1006.  Under the proper analysis, "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. at 324.

Here, the FAC alleges that Dean, as one of the two managing members and officers of SDEP, and as the person in charge of fundraising and overseeing the construction of Avalon San Diego, had knowledge of all relevant material information.  Therefore, he knew that the representations he made to Plaintiff concerning the project were false and/or misleading.  (Dkt. No. 15, FAC ¶¶ 11, 24, 25.)

First, Defendants represented that they would immediately start renovating and remodeling the venue resulting in a brand new nightclub, when in fact they had no such plan and Defendants have not taken any steps towards remodeling or renovating the venue.  (Id. ¶¶ 13, 23, 27.)  In fact, the venue remains in the same condition as it was at the time of Defendants' misrepresentations.  (Id. ¶ 27.)  Second, Dean represented

that the venue would be open within a few months, accommodating various activities including live entertainment, international touring DJs, dance club nights, special events and media/film produce but the venue did not open at all. (<u>Id.</u> ¶ 13, 23.) Third, Defendants asserted that their long-term Boston partners had already agreed to provide, without conditions, funds in the total amount of $2.5 million, and thus with Plaintiff's $200,000 investment, the project was sufficiently funded to move forward; however, the Boston partners had preconditions to fund the remaining $2.5 million required to develop the venue, making their involvement uncertain from the start. (<u>Id.</u>) Fourth, Defendants told Plaintiff they would lease the building, but instead they contemplated purchasing the building so the project was not sufficiently funded. (<u>Id.</u>) Lastly, they represented that the venue would generate high returns but it did not generate any revenue. (<u>Id.</u>) Based on Dean's extensive experience in the nightclub industry, Plaintiff reasonably believed Dean's misrepresentations. (<u>Id.</u> ¶¶ 20, 22.) These representations were made in order to induce Plaintiff to invest $200,000. (<u>Id.</u> ¶ 26.)

As one of two persons in charge of developing Avalon San Diego and the person in charge of fundraising and construction, Dean's representations about the impending construction of Avalon San Diego and its potential success, viewed in conjunction with the fact that the Avalon San Diego never got off the ground create a strong inference that he intentionally made the misrepresentations in order to induce Plaintiff to invest $200,000. <u>See</u> <u>Qun v. Karstetter</u>, Case No. 14cv1362-CAB(DHB), 2014 WL 12461260, at *7 (S.D. Cal. Sept. 24, 2014) (scienter sufficiently plead where there was strong inference that misrepresentations were made to the plaintiff in order to induce him to invest $1.5 million). Accepting all factual allegations as true, viewing all the allegations holistically, and drawing all reasonable inferences in Plaintiff's favor, the allegations give rise to a strong inference that Defendants knowingly made false statements to induce Plaintiff to invest in Avalon San Diego. This inference is equally as compelling as the competing inference that Defendants had an honest intent in opening and operating the nightclub but that it did not come to fruition. Accordingly,

the Court DENIES Defendant's motion to dismiss on the federal securities fraud cause of action.

**D.     Control Person Liability under § 20(a) of the Securities Exchange Act of 1934 as to Defendant Dean**

Defendants argue that Dean is not liable as a control person under § 20(a) of the Act and should be dismissed.  Plaintiff asserts he has adequately pleaded that Dean, as one of only two managers and officers of the corporation, should be held jointly liable with SDEP under control person liability.

In order to prove a prima facie case under § 20(a) of the Act, 15 U.S.C. § 78t(a), a plaintiff must show: (1) a primary violation of federal securities laws . . . ; and (2) that the defendant exercised actual power or control over the primary violator." Howard v. Everex Sys., Inc., 228 F.3d 1057, 1065 (9th Cir. 2000).  A plaintiff "need not show the controlling person's scienter or that they "culpably participated" in the alleged wrongdoing." Paracor Fin., Inc. v. Gen. Elec. Capital Corp., 96 F. 3d 1151, 1161 (9th Cir. 1996).  Whether a defendant is a "controlling person 'is an intensely factual question,' involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." Kaplan v. Rose, 49 F.3d 1363, 1382 (9th Cir. 1994) overruled on other grounds by City of Dearborn Heights Act 345 Policy & Fire Retirement Sys. v. Align Tech, Inc., 856 F.3d 605 (9th Cir. 2017).  However, at the motion to dismiss stage, allegations about an individual's title and duties have been found to be sufficient to establish control. Kyung Cho v. UCBH Holdings, Inc., 890 F. Supp. 2d 1190, 1197 (N.D. Cal. 2012) (citing In re Metawave Comm'ns. Corp. Sec. Litig., 298 F. Supp. 2d 1056, 1087 (W.D. Wash. 2003); see also In re Immune Response Sec. Litig., 375 F. Supp. 2d 983, 1031-32 (S.D. Cal. 2005) (finding allegations that defendants held positions as CEO and Chairman of the Board and described their roles were sufficient to show they were involved in the company's day-to-day business); In re Cylink Sec. Litig., 178 F. Supp. 2d 1077, 1079 (N.D. Cal. 2001) (finding sufficient for control person liability

allegations that the individual defendants, "by virtue of their executive and managerial positions had the power to control and influence [Cylink], which they exercised")).

As discussed above, Plaintiff has sufficiently alleged a violation of the federal securities laws. See Kyung Cho, 890 F. Supp. 2d at 1197 ("Where a plaintiff asserts a Section 20(a) claim based on an underlying violation of section 10(b), the pleading requirements for both violations are the same."). Next, the FAC also alleges that Dean is one of only two managing members and officers of the corporation and that he was in charge of fundraising and overseeing the construction of the venue. (Dkt. No. 18, FAC ¶¶ 7, 11, 13, 25.) These facts are sufficient to withstand a motion to dismiss under § 20(a) of the Act. The Court DENIES Defendants' motion to dismiss the cause of action under § 20(a) of the Securities Exchange Act of 1934 as to Defendant Dean.

**E.     Fraudulent Inducement**

Defendants argue that this claim continues to fail to allege with specificity the scienter element of fraudulent inducement and that future predictions cannot state a claim. Plaintiff argues he has amended the complaint and sufficiently alleged scienter, and he claims that even if Defendants' statements were opinions as to future events or actions, they fall under the exception where a party holds himself out to be specially qualified and the other party reasonably relies on this superior knowledge, and the statements made to Plaintiff were presented as to existing facts, and not as opinions.

Under California law, the elements of a fraud claim are: (a) misrepresentation; (b) scienter; (c) intent to defraud; (d) justifiable reliance; and (e) resulting damage. Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996). Fraud in the inducement is a subset of the tort of fraud and "occurs when the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." Hinesley v. Oakshade Town Ctr., 135 Cal. App. 4th 289, 294 (2005) (internal citations and quotations omitted).

The misrepresentations alleged under fraudulent inducement are the same as the federal securities claim. The Court concluded above that the FAC sufficiently alleges

that Defendants acted with scienter under the federal securities claim. Since scienter is also an element of fraudulent inducement, Plaintiff has alleged sufficient facts to satisfy the scienter heightened pleading requirement under Rule 9(b).

Next, "[a]n actionable misrepresentation must be made as to past or existing facts." Borba v. Thomas, 70 Cal. App. 3d 144, 152 (1977) (citing 4 Witkin, Summary of Cal. Law, Torts, § 447, p. 2712 (8th ed. 1975)). Here, Defendants' statement that their long-term Boston partners had agreed to provide $2.5 million to support the project, and with Plaintiff's $200,000 investment, the project was sufficiently funded to proceed forward was a misrepresentation as to a past or existing fact and is actionable.

It is a general rule that "predictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud." 5 Witkin, Summary of Cal. Law, Torts, § 678, pp. 779-80 (9th ed. 1988); Richard P. v. Vista Del Mar Child Care Serv., 106 Cal. App. 3d 860, 865 (1980) ("Fraudulent representations, to constitute ground for relief, must be as to existing and material facts; predictions of future events are ordinarily considered nonactionable expressions of opinion."). An exception to this rule exists "(1) where a party holds himself out to be specially qualified and the other party is so situated that he may reasonably rely upon the former's superior knowledge; (2) where the opinion is by a fiduciary or other trusted person; [and] (3) where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion." Cohen v. S & S Construction Co., 151 Cal. App. 3d 941, 946 (1983) (quoting Borba v. Thomas, 70 Cal. App. 3d 144, 152 (1977)).

Under the third exception, the court of appeal in Borba explained that there is one common thread in these cases, "the relationship of the parties and the circumstances under which the opinion was expressed were such as to imply a superior knowledge by the defendant of the subject matter of the representation." Borba, 70 Cal. App. 3d at 153.

> For example, a statement by an architect to an owner that a building will not cost more than a certain amount may be regarded as an affirmation of fact. . . .The same is true where an agent states that his principal will advance money to harvest a crop . . . or where a corporation agent represents that the corporation will lease certain property or locate a plant in a certain city . . . . Also, a representation by a corporation's agent that a particular dividend will be paid within a specified period of time may be actionable . . . . So too, a representation by the seller of a motel that plaintiff could keep it rented all the time–reasonably implies knowledge of past full occupancy.. . .

Id. (citations omitted). "Thus where one party possesses or assumes to possess superior knowledge regarding the subject matter of the representation, which knowledge is not equally open to the other, what might otherwise be regarded as an expression of opinion may amount to an affirmation of fact." Eade v. Reich, 120 Cal. App. 32, 35 (1932); see also Bily v. Arthur Young & Co., 3 Cal. 4th 370, 408 (1992) ("when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation [although in the form of an opinion] may be treated as one of material fact.").

Both parties provide a conclusory analysis alleging either that the exceptions apply or that it does not apply without providing sufficient relevant legal authority to support their positions. After the Court's review of the relevant case law, it concludes that the third exception applies in this case.

Here, Plaintiff alleges that Defendants represented themselves as having extensive experience and knowledge about establishing a nightclub. (Dkt. No. 18, FAC ¶ 11.) Dean claimed that he was part of the original development team for Avalon Hollywood, had experience operating nightclubs in San Diego, and owned and/or directed similar sized nightclubs in major cities such as London, San Francisco and Los Angeles for 25 years. (Id. ¶ 11.) He also stated that he was in charge of the fundraising and the construction of Avalon San Diego. (Id.) Dean represented that he had superior knowledge and experience in the nightclub industry and Plaintiff reasonably relied on

his representations as to future events.  These statements include that Defendants would immediately start renovating and remodeling the venue, (Dkt. No. 15, FAC ¶¶ 13, 20),  that the venue would be up and running within a few months, (id. ¶ 13), that they would lease the building, and that Avalon San Diego would generate high returns for Plaintiff.  (Id.)  Therefore, under the third exception, Dean's opinions may be treated as a past or existing fact and constitute actionable misrepresentation. Accordingly, the Court DENIES Defendants' motion to dismiss the fraudulent inducement cause of action.

## F.    Negligent Misrepresentation

Defendants argue that since the alleged representations are opinions as to future events, and no exception applies, this cause of action fails.  Plaintiff argues he even if the statements made by Dean were opinions as to future events, they fall under the two exceptions.

The elements of negligent misrepresentation are: " (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." Fox v. Pollack, 181 Cal. App. 3d 954, 962 (1986). Negligent misrepresentation "does not require scienter or intent to defraud." Small v. Fritz Companies, Inc., 30 Cal. 4th 167, 163-64 (2003).  "An essential element of a cause of action for negligent misrepresentation is that the defendant must have made a misrepresentation as to a past or existing material fact." Gentry v. eBay, Inc., 99 Cal. App. 4th 816, 835 (2002) (citation omitted).   "The law is quite clear that expressions of opinion are not generally treated as representations of fact, and thus are not grounds for a misrepresentation cause of action.  Representations of value are opinions." Id. (citations omitted); Cansino v. Bank of America, 224 Cal. App. 4th 1462, 1469 (2014) (citation omitted) ("Statements or predictions regarding future events are deemed to be mere opinions which are not actionable.").   However, there are exceptions to this rule.

See Cohen, 151 Cal. App. 3d at 946 (applying exception to negligent misrepresentation claim).

As noted above, the statements made by Dean fall under the exception "where a party states his opinion as an existing fact or as implying facts which justify a belief in the truth of the opinion." See id. at 946 (quoting Borba, 70 Cal. App. 3d at 152). Therefore, because the alleged misrepresentations fall under an exception, the Court DENIES Defendants' motion to dismiss the cause of action for negligent misrepresentation.

## G.    State Securities Fraud Cause of Action

Relying on the same argument, Defendant argues that since Plaintiff has failed to allege scienter as to the federal securities fraud cause of action, the state securities fraud claim also fails.  Plaintiff continues to contend that he has sufficiently alleged scienter.

Plaintiff alleges violations of California Corporation Code sections 25401, 25501 (rescission), 25504[3] (joint and several liability of principals and agent), 25504.1[4] (joint and several liability who assist in violations) based on the same underlying facts as the federal securities fraud claim.  The California Corporate Securities Law of 1968 includes three sections concerning fraudulent and prohibited practices in the purchase and sale of securities, namely §§ 25400-25402.  Relevant in this case, section 25401 prohibits misrepresentation in connection with the purchase or sale of securities in

_____

[3]"Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist."  Cal. Corp. Code § 25504.

[4]"Any person who materially assists in any violation of Section 25110, 25120, 25130, 25133, or 25401, . . .with intent to deceive or defraud, is jointly and severally liable with any other person liable under this chapter for such violation."  Cal. Corp. Code § 25504.1.

general. <u>California Amplifier, Inc. v. RLI Ins. Co.</u>, 94 Cal. App. 4th 102, 108-09 (2001). While section 25401 is penal in nature, the corresponding section 25501 establishes a private remedy for damages. <u>Id.</u> at 113; Cal. Corp. Code. § 25501.

In 2014 and 2015, when the alleged acts of misrepresentations occurred, California Corporations Code section 25401 tracked the language in Rule 10b-5 and provided that,

> It is unlawful for any person, in connection with the offer, sale, or purchase of a security, directly or indirectly, to do any of the following:
>
> (a) Employ a devise, scheme, or artifice to defraud.
>
> (b) Make any untrue statement of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading.
>
> (c) Engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

Cal. Corp. Code § 25401 (2014 & 2015). Since the 2014 and 2015 version of section 25401 was patterned after Rule 10b-5 which was adopted under the Securities Exchange Act of 1934, and which itself was modeled on § 17a of the Securities Act of 1933, 15 U.S.C. § 77q(a)[5], <u>SEC v. Tambone</u>, 597 F.3d 436, 444 (1st Cir. 2010) ("the

---

[5] 15 U.S.C. § 77q(a) provides,

(a) Use of interstate commerce for purpose of fraud or deceit

It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement (as defined in section 78c(a)(78) of this title) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a). § 77q(a)(1) of the 1933 Act requires scienter while § 77q(a)(2) and § 77q(a)(3) do not require scienter. <u>Aaron v. SEC</u>, 446 U.S. 680, 701-02 (1980). Instead, sections 77q(a)(2) and (3) require a showing of negligence. <u>SEC v. Dain</u>

drafters of Rule 10b-5 modeled the rule on section 17(a)"), federal cases provide persuasive authority in construing state securities law. See Moreland v. Dep't of Corp., 194 Cal. App. 3d 506, 512 (1987) (because state securities law was patterned after federal Securities Act of 1933, federal law can be persuasive authority); People v. Schock, 152 Cal. App. 3d 379, 387 (1984) (federal decision interpreting California securities law useful as it was patterned after the Securities Act of 1933); Oak Indus., Inc. v. Foxboro Co., 596 F. Supp. 601, 606 (S.D. Cal. 1984) (finding that "the federal constructions are useful in construing state law"). While it does not appear that any state court case has analyzed the scienter requirement under this section, Rule 10b-5 requires a pleading of scienter. See Tellabs, Inc., 551 U.S. at 321.

The parties do not appear to dispute that scienter is a requirement under former section 24501. Since the Court has concluded above that Plaintiff has alleged a cause of action under § 10(b) and Rule 10b-5, then Plaintiff has also stated a claim for a violation of state securities law. See e.g., Mausner v. Marketbyte LLC, 12cv2461-JM(NLS), 2013 WL 12073832, at *12 (S.D. Cal. Jan. 4, 2013) (applying same analysis since elements of California securities fraud are similar to federal securities fraud). Thus, the Court DENIES Defendants' motion to dismiss the state securities claim.

**H.      UCL**

Defendants argue that the UCL claim should be dismissed as all the other claims fail to state a claim for relief. Plaintiff disagrees.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." Rubio v. Capital One Bank, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted). Where a plaintiff alleges fraud or a claim is grounded in fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of

Rauscher, Inc., 254 F.3d 852, 856 (9th Cir. 2001). There is no private right of action under § 17(a) of the Securities Act of 1933. In re Washington Pub. Power Supply Sys. Sec. Litig., 823 F.2d 1349, 1358 (9th Cir. 1987).

fraud under section 17200 must comply with Rule 9(b) <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) particularity requirement to UCL claim grounded in fraud).

### 1. Unlawful

The unlawful prong of the UCL incorporates "violations of other laws and treats them as unlawful practices." <u>Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 180 (1999). This prong creates an "independent action when a business practice violates some other law." <u>Walker v. Countrywide Home Loans, Inc.</u>, 98 Cal. App. 4th 1158, 1169 (2002). A UCL claim "stands or falls depending on the fate of antecedent substantive causes of action." <u>Krantz v. BT Visual Images</u>, 89 Cal. App. 4th 164, 178 (2001).

In this case, the FAC alleges that Defendants' conduct was unlawful because it violated federal and state securities law. (<u>Id.</u> ¶ 64.) Since Plaintiff has sufficiently alleged a violation of the federal and state securities law, he has stated a claim under the unlawful prong of the UCL.

### 2. Unfair

The application of the unfair prong to consumer actions has not yet been resolved by the California Supreme Court and California appellate courts have applied different approaches. In <u>Cel-Tech</u>, the California Supreme Court held that in a claim where a plaintiff claims injury from a direct competitor, a business act or practice is "unfair" when the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." <u>Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.</u>, 20 Cal. 4th 163, 187 (1999). Where a claim of an unfair act or practice is predicated on public policy, <u>Cel-Tech</u> requires that the public policy which is a predicate to the action must be "tethered to specific constitutional, statutory or regulatory provisions." <u>Schnall v. Hertz Corp.</u>, 78 Cal. App. 4th 1144, 1166 (2000) (<u>Cel-Tech</u> holding that "*any* claims

of unfairness under the UCL should be defined in connection with a legislatively declared policy" also applied to UCL actions brought by consumers). While the court in Cel-Tech limited its application of the unfairness test to competitors, Id. n. 12, some California appellate courts have extended Cel-Tech analysis to consumer cases. See Gregory v. Albertson's, Inc., 104 Cal. App. 4th 845, 854 (2002); Byars v. SCME Mortg. Bankers Inc., 109 Cal. App. 4th 1134, 1147 (2003); Schnall, 78 Cal. App. 4th at 1166 (Cel-Tech holding that "*any* claims of unfairness under the UCL should be defined in connection with a legislatively declared policy" also applied to UCL actions brought by consumers).

Other appellate courts apply the pre-Cel-Tech balancing test in S. Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861 (1999). See Smith v. State Farm Mutual Automobile Ins. Co., 93 Cal. App. 4th 700, 719-20 (2001). A business practice is 'unfair' "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." S. Bay Chevrolet, 72 Cal. App. 4th at 886-87. This test of "whether a business practice is unfair 'involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. . . .'" Id. at 886.

Without "guidance from the California courts about the proper definition of an 'unfair' business practice, federal courts have applied both tests." Hodsdon v. Mars, Inc., 162 F. Supp. 3d 1016, 1027 (N.D. Cal. 2016) (citing Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 736 (9th Cir. 2007)).

In this case, neither party has addressed which "unfair" standard should apply. Defendants do not dispute Plaintiff's allegation concerning which standard applies but they merely challenge the unfair prong by arguing that the FAC fails to satisfy the particularity requirements of pleading fraud citing to paragraphs 65 and 66. However, the Court has concluded that the particularity requirements have been satisfied.

The FAC alleges that Defendants' conduct of knowingly making false and/or misleading statements with the intent to fraudulently induce Plaintiff to invest in Avalon San Diego was immoral because it was done in violation of federal and state securities laws. (Dkt. No. 15, FAC ¶ 65.) The details of the conduct are described in paragraphs 1-62 of the FAC. It appears that Plaintiff is relying on the pre-Cel-Tech balancing test announced in S. Bay Chevrolet by alleging Defendant's conduct was immoral. At this stage of the proceeding, and because the parties did not fully address the elements of alleging an unfair claim, the Court concludes that Plaintiff has alleged a claim under the unfair prong of the UCL.

### 3. Fraudulent

To state a claim under the fraudulent prong of the UCL, "it is necessary only to show that members of the public are likely to be deceived" by the business practice. Prakashpalan v. Engstrom, Lipscomb and Lack, 223 Cal. App. 4th 1105, 1134 (2014). A "UCL claim under the 'fraudulent prong' requires the plaintiff to have actually relied on the alleged misrepresentation to its detriment." In re Tobacco II Cases, 46 Cal. 4th 298, 326 (2009).

The FAC alleges that members of the public are likely to be deceived by Defendants' unlawful business practices because people with no investment experience will likely rely on Defendants' knowledge and experience in operating nightclubs. (Dkt. No. 15, FAC ¶ 66.) In this case, Plaintiff relied on Defendants' alleged misrepresentations and is out of pocket $200,000. (Id. ¶ 45.) Plaintiff has properly alleged a claim under the fraudulent prong.

In sum, the Court DENIES Defendants' motion to dismiss the UCL claim.

////
////
////
////
////

[16cv2997-GPC(NLS)]

**Conclusion**

Based on the above, the Court DENIES Defendants' motion to dismiss the first amended complaint. The hearing set for August 11, 2017 shall be **vacated.**

IT IS SO ORDERED.

DATED: August 7, 2017

HON. GONZALO P. CURIEL
United States District Judge